1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

9   SHAUN DARNELL GARLAND,                CASE NO. 1:06-cv-00198-OWW-GSA PC

10              Plaintiff,                FINDINGS AND RECOMMENDATIONS
                                         RECOMMENDING (1) DISMISSAL OF
11       v.                              CLAIM AGAINST DEFENDANT LEWIS FOR
                                         IMPROPER VENUE, AND (2) DISMISSAL OF
12   A. K. SKRIBNER, et al.,             REMAINING CLAIMS FOR FAILURE TO
                                         STATE ANY CLAIMS UPON WHICH RELIEF
13              Defendants.              MAY BE GRANTED

14                                       (Doc. 22)

15                                       OBJECTIONS DUE WITHIN THIRTY DAYS
                                    /
16

17       **Findings and Recommendations Following Screening of Second Amended Complaint**

18   **I.      Procedural History**

19       Plaintiff Shaun Darnell Garland ("Plaintiff") is a state prisoner proceeding pro se and in

20   forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed this action on

21   February 22, 2006.  On December 18, 2006, the Court dismissed Plaintiff's complaint, with leave

22   to amend, for failure to comply with Federal Rule of Civil Procedure 8(a).  Plaintiff filed an amended

23   complaint on March 23, 2007, and on February 26, 2008, the Court dismissed the complaint with

24   leave to amend for failure to state any claims.  Plaintiff filed his second amended complaint on

25   March 31, 2008.

26   **II.     Screening Requirement**

27       The Court is required to screen complaints brought by prisoners seeking relief against a

28   governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

1

1  Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

2  "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

3  monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

4  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

5  dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a

6  claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

7         "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited

8  exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S.

9  506, 512 (2002); Fed. R. Civ. P. 8(a).  Pursuant to Rule 8(a), a complaint must contain "a short and

10  plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a).

11  "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the

12  grounds upon which it rests."  Swierkiewicz, 534 U.S. at 512.  However, "the liberal pleading

13  standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330

14  n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements

15  of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257

16  (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

17  **III.     Plaintiff's Claims**

18         Plaintiff is an inmate housed at Kern Valley State Prison in Delano, California.  The events

19  at issue in this action allegedly occurred at California State Prison-Lancaster and California State

20  Prison-Corcoran.  Plaintiff names Warden A. K. Scribner; Correctional Officers D. Peters, Lerma,

21  Burnias, and Lewis; Correctional Counselor Ortiz, and Office Staff Services Manager B. Silva as

22  defendants.  Plaintiff is seeking money damages and an injunction mandating his transfer to federal

23  custody.  Plaintiff alleges that Defendants violated his rights under the United States Constitution

24  by retaliating against him and discriminating against him.

25         **A.     Claims Against Defendant Lewis**

26         In his third amended complaint, Plaintiff asserts for the first time claims against Defendant

27  Lewis, a Correctional Officer at CSP-Lancaster, arising from events which occurred when Plaintiff

28  was at CSP-Lancaster.  Venue for Plaintiff's claims against Defendant Lewis is proper in the Central

1  District of California.  Plaintiff may not pursue claims against Defendant Lewis in this action, which

2  was originally filed based on events occurring at CSP-Corcoran.  The Court recommends dismissal

3  of the claims against Defendant Lewis, without prejudice, based on improper venue.  See Costlow

4  v. Weeks, 790 F.2d 1486, 1488 (9th Cir. 1986) (court may raise defective venue sua sponte); see also

5  Davis v. Mason County, 927 F.2d 1473, 1479 (9th Cir. 1991) (courts have broad discretion regarding

6  severance).

7          **B.**       **Claims Arising From Events at CSP-Corcoran**

8                 **1.**        **Summary of Allegations**[1]

9        In 1992, Plaintiff was identified as a prison gang member and in 1993, Plaintiff was received

10  at Pelican Bay State Prison after being sentenced to an indeterminate Security Housing Unit term as

11  a member of the Black Guerilla Family.  Plaintiff disputes that he is a gang member and alleges that

12  he became a former member in 1983 when he was given a "political purge" by group leaders

13  following his involvement in the Islamic faith.  (Doc. 22, 2nd Amend. Comp., ¶¶9-10.)

14        Plaintiff was scheduled for release from the SHU on May 31, 2000, and was transferred to

15  the California Correctional Institution in Tehachapi on July 19, 2000.  In March 2002, Plaintiff was

16  transferred to CSP-Lancaster, and in November 2002, Plaintiff was transferred to the "Honor Yard"

17  at CSP-Lancaster.  (Id., ¶17.)  In April 2003, Plaintiff filed an administrative complaint against an

18  officer.  Plaintiff was subsequently issued a rules violation and was transferred off of the Honor

19  Yard.[2]

20        On January 29, 2004, Plaintiff was transferred from CSP-Lancaster to CSP-Corcoran.  In

21  June of 2004, Plaintiff was interviewed by Defendant Peters, a member of the institutional gang

22  investigative staff, who warned Plaintiff that "Big Brother" was watching.  (Id., ¶31.)

23  

---

24     [1] Plaintiff's second amended complaint is lengthy and sets forth many allegations which are not directly relevant to his claims against staff at CSP-Corcoran and which are legal argument.  Because section 1983 requires

25  linkage between the defendants and the actions or omissions complained of, the Court will summarize only the allegations that relate to the named defendants.  Hydrick v. Hunter, 500 F.3d 978, 987 (9th Cir. 2007).  Irrelevant

26  allegations and Plaintiff's conclusory legal arguments are omitted.

27     [2] A more detailed summarization of events at CSP-Lancaster as set forth in the complaint is not necessary because Plaintiff's claims based on those events are not properly brought in this suit and the Court recommends

28  dismissal for improper venue.  The Court notes for the record, however, that more detailed facts concerning these events are alleged in the complaint.

1    On July 18, 2004, Defendant Lerma collected for mailing three copies of Plaintiff's response

2  to the court's order to show cause in his pending civil action.  On August 5, 2004, the court in that

3  case ordered Plaintiff to effect service within fourteen days, as the court was not in receipt of

4  Plaintiff's response to the order to show cause.  On August 27, 2004, the court received back mail

5  it had sent to Plaintiff at CSP-Corcoran.  The mail was returned marked "no such street number,"

6  although Plaintiff had not moved.  (Id., ¶34.)

7    On September 14, 2004, Plaintiff filed an administrative complaint concerning the legal mail

8  collected by Defendant Lerma but never received by the court.  Plaintiff requested the mail log,

9  which was provided by Defendant Ortiz.  The three copies were logged in as having been sent to the

10  court.

11    On November 8, 2004, Plaintiff received a letter informing him that his father had died.  The

12  letter was received at CSP-Corcoran on June 24, 2004.  Plaintiff filed an administrative complaint

13  and was interviewed by Defendant Silva.  Plaintiff stated that he knew his mail was being flagged

14  by IGI (Institutional Gang Investigators).  Defendant Silva told Plaintiff that he could not comment

15  on whether the mail was being flagged but if IGI did not pick up the mail on the day it was flagged,

16  Silva passed it onto the recipient and would not hold it.  Defendant Silva then mused over how to

17  answer the complaint in order to cover himself.

18    On February 10, 2005, Plaintiff made a request to Defendant Ortiz for copies from his central

19  file.  Defendant Ortiz said she would supply the copies the next day, but failed to do so.  On February

20  22, 2005, Plaintiff wrote to Defendant Ortiz asking for the copies, and on March 2 and 6, 2005,

21  Plaintiff filed grievances against Ortiz for refusing to provide him with copies.

22    On March 2, 2005, Plaintiff filed an administrative complaint against Defendant Burnias for

23  refusing to provide Plaintiff with a cell search receipt following a search conducted on February 17,

24  2005.  Plaintiff alleges that he filed numerous grievances against Defendant Burnias for harassing

25  Plaintiff because he is a black prisoner adversely transferred to CSP-Corcoran and identified by IGI

26  as an inactive prison gang member engaged in filing prison grievances and litigation.

27    On July 6, 2005, Plaintiff submitted an administrative complaint dated June 15, 2005, along

28  with ten copies of past complaints and two letters to the warden, in compliance with the appeals

1  coordinator's request for documentation. Plaintiff requested a polygraph examination on the issue

2  of his gang membership. The June 15 and July 6 appeals were directed at Defendant Peters. The

3  documents were submitted to the appeals coordinators, but were not returned or responded to.

4  Plaintiff was then transferred to Kern Valley State Prison on August 15, 2005.

5        On December 29, 2004, and March 1, 2005, Plaintiff sent certified mail to Defendant

6  Scribner complaining that his staff members were denying Plaintiff his right to file administrative

7  appeals, and that his right of access to the courts was being interfered with by staff. Plaintiff was

8  told to address his complaints via the administrative process by filing a 602 (inmate appeal).

9        **1.    Retaliation**

10       Under section 1983, Plaintiff is required to show that each named defendant (1) acted under

11 color of state law, and (2) committed conduct which deprived Plaintiff of a federal right. Hydrick

12 v. Hunter, 500 F.3d 978, 987 (9th Cir. 2007). "A person deprives another of a constitutional right,

13 where that person 'does an affirmative act, participates in another's affirmative acts, or omits to

14 perform an act which [that person] is legally required to do that causes the deprivation of which

15 complaint is made.'" Id. at 988 (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).

16 "[T]he 'requisite causal connection can be established not only by some kind of direct, personal

17 participation in the deprivation, but also by setting in motion a series of acts by others which the

18 actor knows or reasonably should know would cause others to inflict the constitutional injury.'" Id.

19 (quoting Johnson at 743-44).

20       Plaintiff alleges that he was retaliated against for filing grievances and litigating in court.

21 Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the

22 government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985);

23 see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802,

24 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation

25 entails five basic elements: (1) An assertion that a state actor took some adverse action against an

26 inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the

27 inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a

28 legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

1    Adverse action is action that "would chill a person of ordinary firmness" from engaging in

2  that activity.  Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006); White v. Lee, 227

3  F.3d 1214, 1228 (9th Cir. 2000); see also Lewis v. Jacks, 486 F.3d 1025, 1028 (8th Cir. 2007); see

4  also Thomas v. Eby, 481 F.3d 434, 440 (6th Cir. 2007); Bennett v. Hendrix, 423 F.3d 1247, 1250-51

5  (11th Cir. 2005); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th

6  Cir. 2005); Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004); Rauser v. Horn, 241 F.3d 330, 333

7  (3d Cir. 2001).  Both litigation in court and filing inmate grievances are protected activities and it

8  is impermissible for prison officials to retaliate against inmates for engaging in theses activities.

9  However, not every allegedly adverse action will be sufficient to support a claim under section 1983

10  for retaliation.  In the prison context, cases in this Circuit addressing First Amendment retaliation

11  claims involve situations where the action taken by the defendant was clearly adverse to the plaintiff.

12  Rhodes, 408 F.3d at 568 (arbitrary confiscation and destruction of property, initiation of a prison

13  transfer, and assault in retaliation for filing grievances); Austin v. Terhune, 367 F.3d 1167, 1171 (9th

14  Cir. 2004) (retaliatory placement in administrative segregation for filing grievances); Bruce v. Ylst,

15  351 F.3d 1283, 1288 (9th Cir. 2003) (retaliatory validation as a gang member for filing grievances);

16  Hines v. Gomez, 108 F.3d 265, 267(9th Cir. 1997) (retaliatory issuance of false rules violation and

17  subsequent finding of guilt); Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (retaliatory prison

18  transfer and double-cell status in retaliation); Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th

19  Cir. 1989) (inmate labeled him a snitch and approached by other inmates and threatened with harm

20  as a result); Rizzo v. Dawson, 778 F.2d 527, 530-32 (9th Cir. 1985) (retaliatory reassignment out

21  of vocational class and transfer to a different prison).

22    Plaintiff's allegations are vague and conclusory at best.  Plaintiff has not alleged facts linking

23  Defendants Scribner, Peters, Lerma, Burnias, Ortiz, and Silva to any adverse action of significance

24  because of the exercise of Plaintiff's protected First Amendment right to file grievances and lawsuits.

25  At most, Plaintiff  has alleged that mail handed to Lerma did not reach the court, that Silva

26  interviewed him regarding the late delivery of a letter, that Burnias was harassing him, that Ortiz did

27  not provide him with copies as requested, and that Scribner told him to raise his complaints of staff

28  misconduct via the inmate appeals process.  There are no facts alleged that Lerma was responsible

6

1  to throwing away Plaintiff's mail or otherwise preventing it from reaching the court, and the vague

2  allegations that Burnias was harassing him and failed to give him a cell search receipt do not support

3  a retaliation claim, as neither are sufficiently adverse to support a claim.  The other defendants have

4  even less of a connection to any constitutionally questionable activity.  The Court finds that

5  Plaintiff's allegations falls short of stating a viable retaliation claim.

6              **2.      Equal Protection**

7          Although Plaintiff alleges he was discriminated against based on his race and his religion,

8  Plaintiff's second amended complaint does not set forth any facts supporting an equal protection

9  claim against Defendants Scribner, Peters, Lerma, Burnias, Ortiz, and Silva.

10         The Equal Protection Clause requires that persons who are similarly situated be treated alike.

11  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985).  An equal protection

12  claim may be established in two ways.   First, a plaintiff establishes an equal protection claim by

13  showing that the defendant has intentionally discriminated on the basis of the plaintiff's membership

14  in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001).  Under

15  this theory of equal protection, the plaintiff must show that the defendants' actions were a result of

16  the plaintiff's membership in a suspect class, such as race.  Thornton v. City of St. Helens, 425 F.3d

17  1158, 1167 (9th Cir. 2005).  Alternatively, if the action in question does not involve a suspect

18  classification, a plaintiff may establish an equal protection claim by showing that similarly situated

19  individuals were intentionally treated differently without a rational relationship to a legitimate state

20  purpose.  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); San Antonio School District

21  v. Rodriguez, 411 U.S. 1 (1972); Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 944

22  (9th Cir.2004); SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002).

23         Plaintiff has not alleged any facts supporting a claim that any of the named defendants

24  intentionally discriminated against him by treating him differently than other similarly situated

25  inmates.  At most, Plaintiff alleges unspecified harassment by Defendant Burnias.  This vague

26  allegation is insufficient to support a claim.

27  ///

28  ///

**3.   Conspiracy**

Plaintiff alleges generally that Defendants were engaged in a conspiracy. A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

Plaintiff's bare allegations of conspiracy do not support a claim for relief.

**4.   Access to the Courts/Access to Grievance Process**

Although Plaintiff alleges that his right of access to the courts and to redress grievances was interfered with, Plaintiff has not stated a viable claim for denial of access to the courts. Plaintiff has not demonstrated that he suffered an actual injury as a result of the action or omission of any named defendant.[3] Christopher v. Harbury, 536 U.S. 403, 415, 122 S.Ct. 2179 (2002); Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174 (1996); Phillips v. Hust, 477 F.3d 1070, 1076-77 (9th Cir. 2007). The absence of an actual injury is fatal to Plaintiff's claim.

With respect to the grievance procedure, the existence of the procedure does not create any substantive rights and allegations of interference with the process do not support a claim under section 1983. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001). To the extent that

---

[3] For backward-looking claims, a plaintiff "must show: 1) the loss of a 'nonfrivolous' or 'arguable' underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit." Phillips v. Hust, 477 F.3d 1070, 1076 (9th Cir. 2007). The first element requires that plaintiff show he suffered an "actual injury" by being shut out of court. Harbury 536 U.S. at 415, 121 S.Ct. at 2187; Lewis, 518 U.S. at 351, 116 S.Ct. at 2180; Phillips, 477 F.3d at 1076. The second element requires that a plaintiff show a defendant proximately caused the alleged violation of the plaintiff's rights, "[t]he touchstone . . . [for which] is foreseeability." Phillips, 477 at 1077. Finally, the third element requires that a plaintiff show he has no other remedy than the relief available via *this* suit for denial of access to the courts. Id. at 1078-79.

8

1    Plaintiff is prevented from exhausting, a claim for denial of access to the courts would accrue only

2    when and if Plaintiff sustained a dismissal of a civil rights suit as a result of his inability to exhaust

3    and that inability to exhaust was caused through the wrongdoing of prison officials.  42 U.S.C. §

4    1997e(a).  Because exhaustion is an affirmative defense, Jones v. Bock, 127 S.Ct. 910, 921 (2007),

5    and intentional interference with the appeal process might excuse the failure to exhaust, e.g., Kaba

6    v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006) ("Prison officials may not take unfair advantage of the

7    exhaustion requirement, [] and a remedy becomes 'unavailable' if prison employees do not respond

8    to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from

9    exhausting." (quoting Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006))), it is purely speculative

10   that problems with the appeals process will cause the loss of an otherwise viable civil rights claim.

### 5.      Privileges and Immunities

12          Plaintiff asserts in several places that he was denied the privileges and immunities he was

13   due.  "[T]he Privileges and Immunities Clause 'reliev[es] state citizens of the disabilities of alienage

14   in other States . . . .'"  Ponderosa Dairy v. Lyons, 259 F.3d 1148, 1156 (9th Cir. 2001) (quoting Paul

15   v. Virginia, 75 U.S. 168, 180 (1869)).  "Discrimination on the basis of out-of-state residency is a

16   necessary element for a claim under the Privileges and Immunities Clause."  Giannini v. Real, 911

17   F.2d 354, 357 (9th Cir. 1990).  While it is unclear if Plaintiff is in fact attempting to state a claim for

18   violation of the Privileges and Immunities Clause, to the extent he that is, the claim fails as a matter

19   of law.

### IV.    Conclusion and Recommendation

21          The Court recommends that Plaintiff's newly pled claims against Defendant Lewis, which

22   arise from events at CSP-Lancaster, be dismissed based on improper venue.  Further, the Court finds

23   that Plaintiff's second amended complaint does not state any claims upon which relief may be

24   granted against Defendants Scribner, Peters, Lerma, Burnias, Ortiz, and Silva under section 1983.

25   Plaintiff was previously granted leave to amend to cure the deficiencies in his claims but was unable

26   to do so.  Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Accordingly, the Court

27   HEREBY RECOMMENDS that no further leave to amend be granted, and:

28   ///

1.    Plaintiff's claims against Defendant Lewis be dismissed, without prejudice, based on improper venue; and

2.    Plaintiff's retaliation, equal protection, conspiracy, denial of access to the courts, and privileges and immunities claims be dismissed, with prejudice, for failure to state a claim upon which relief may be granted under section 1983.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

   **Dated:    October 1, 2008**              _/s/ **Gary S. Austin**_
                                              UNITED STATES MAGISTRATE JUDGE